UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHSUETTS

| | |
|---|---|
| ZACHARY GROEZINGER, a minor, by his parents, Jennyfer Sordillo and Robert Groezinger, and JENNYFER SORDILLO,<br>     Plaintiff,<br><br>v.<br><br>CARVER SCHOOL DEPARTMENT, CHRISTINE CABRAL, individually and in her capacity as Assistant Principal of Carver Middle High School, SCOTT KNIEF, individually and in his official capacity as Principal of Carver Middle High School, and ELIZABETH SORRELL, individually and in her official capacity as Superintendent of Carver Public Schools, | C.A. No. 13-11814 |

**FIRST AMENDED COMPLAINT,
PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND JURY DEMAND**

I. <u>INTRODUCTION</u>

    1.    Zachary Groezinger ("Zachary")[1] is a thirteen year-old boy at Carver Middle High School who was harassed and bullied for two years because he is Jewish. The Defendants are the school officials and government body in the Town of Carver who did nothing to stop it. On a daily basis, a group of boys assaulted Zachary with derogatory slurs like "Stingy Jew", Nazi salutes, and physical abuse. While the Defendants occasionally punished the bullies for their violent acts, they have done nothing to address the pervasive religious harassment underlying the behavior, despite repeated complaints by Zachary's parents about the anti-Semitic attacks. Recently, criminal charges were filed against two of Zachary's abusers for assault and battery and civil rights offenses. The charges underscore the Defendants' willful disregard for Zachary's wellbeing. Such disregard amounts to nothing less than a violation of Zachary's

---

[1] The original complaint referred to Zachary by his initials only. He and his parents now feel comfortable using his full name.

constitutional right to equal protection under the law regardless of national origin and/or religious affiliation, as well as a violation of his rights under Title VI of the Civil Rights Act of 1964.

2. After the original complaint in this matter was filed and news reports were published about the bullying of Zachary, a private Jewish school offered Zachary the opportunity to attend tuition-free for the upcoming school year. The school is located forty (40) miles from Zachary's home. The School Department, however, refused the request of Zachary's parents to provide transportation. Ms. Sordillo, as a result, will drive Zachary herself to the Jewish school. Ms. Sordillo has time to do this because she lost her previous job with the School Department as a school bus monitor after she filed the original complaint. This constitutes retaliation against Ms. Sordillo for exercising her First Amendment rights to freedom of speech and freedom to petition the government for redress of grievances.

## II. PARTIES

3. Zachary Groezinger is a former student of Carver Middle High School, a resident of Carver, Massachusetts, and Jewish.

4. Jennyfer Sordillo is the mother of Zachary and a resident of Carver, Massachusetts.

5. The Carver School Department is a government subdivision within the Town of Carver that operates the Carver Public Schools and Carver Middle High School.

6. Christine Cabral is the Assistant Principal of Carver Middle High School and, upon information and belief, responsible for the overall day-to-day administration of grades six through eight.

7. Scott Knief is the Principal of Carver Middle High School (the "Carver Middle High") and responsible for the day-to-day administration of the Carver Middle High.

8. Elizabeth Sorrel is the Superintendent of Carver Public Schools and responsible for the overall administration of Carver Public Schools.

### III. JURISDICTION

9. This Court has federal question jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331.

### IV. FACTS

10. Zachary is thirteen years old. He was born in Wareham and raised in the Town of Carver. He loves playing sports, especially basketball and baseball, where he plays three positions: pitcher, catcher, and shortstop. He also loves riding his bike.

11. Until he entered Carver Middle High, Zachary enjoyed attending school. He earned good grades, mostly As and Bs, with some Cs. He genuinely looked forward to going to school.

12. Zachary's mother is Jewish, and Zachary considers himself Jewish. Although he does not keep kosher or attend synagogue regularly,[2] he is fiercely proud of being Jewish. He loves going to Passover meals at his cousins' house and eating matzah ball soup. One of his treasured items is a yarmulke with a Red Sox insignia brought back from Israel by a friend of the family. When he turned thirteen, Zachary wanted to become a Bar Mitzvah. A family friend offered to train him, but his family did not have the financial means for the celebration.

---

[2] When Zachary has attended synagogue, he went to one in nearby Plymouth, since Carver does not have any synagogues.

13. Zachary is diminutive, even for his age. He is approximately four feet, ten inches tall and 93 pounds. All the boys who harassed and bullied Zachary are larger than him, some much so.

14. In the summer between fifth and sixth grade, Zachary was playing football near his house once when some older boys, D.H. and M.V., who also wanted to play, tackled him and beat him up. One of the boys said, "That's how you take down a Jew." This was the first time another boy, or anyone for that matter, had harassed Zachary because he was Jewish, but it would not be the last.

a. Sixth Grade

15. Zachary began Carver Middle High School in sixth grade. The school is a combined middle school and high school, with grades six through twelve. Zachary and his parents are aware of only one other Jewish student in his grade out of approximately 155 students.

16. Since starting Caver Middle High School, Zachary has been harassed and bullied every day by a group of about six other boys: J.A., D.H., M.V., S.M., J.D., and R.M. The harassment and bullying focus on one characteristic: that Zachary is Jewish.

17. Every day at school Zachary is peppered with derogatory slurs by one or more of these boys. The slurs included: "Stingy Jew," "Fucking Jew," "Dirty Jew," "Jew boy," and similar language. This happens in the hallway, in the cafeteria, and sometimes even during class.

18. In addition to the slurs, some of the boys raise their arms while passing by Zachary in a Heil Hitler salute. More than once, one of the boys told Zachary that he needed to get in the oven.

19. At all times, the Defendants did nothing to stop the religious harassment of Z.G, despite complaints by Zachary's mother, Jennyfer Sordillo, that the harassment focused on Zachary being Jewish. The Defendants only took action when the harassment and bullying turned into a physical confrontation. As long as the harassment and bullying did not involve actual fights, the Defendants turned a blind eye.

20. Around Halloween during Zachary's sixth grade year, Carver Middle High held a social event called Haunted Hallways. Zachary and his mother, Ms. Sordillo, attended. Since Haunted Hallways is a school function, teachers and school officials attend, some dressing up, some as monitors. While Zachary was standing by himself for a moment near the school entrance, R.M. and S.M. found him and pulled him away from the door. They pushed him up against a brick wall then onto the ground, hitting him while calling him a variety of derogatory slurs, and then stole his wallet. When Ms. Sordillo found out, she confronted the boys who stole Zachary's wallet; they returned the wallet but not the cash inside.

21. The following Monday, Ms. Sordillo visited with Principal Scott Knief to discuss the incident and see what the school would do. Knief told her that the boys had complained that she had assaulted them. He barred her from school events for three months.

22. Zachary complained to his mother regularly about the harassment and bullying. Ms. Sordillo called the school about the harassment and bullying several times each week while Zachary was in the sixth grade. She initially complained to Assistant Principal Christine Cabral when she called. Each time, Cabral told Ms. Sordillo that she would investigate the issue and get back to her. Usually Cabral failed to get back to Ms. Sordillo; when she did get back to Ms. Sordillo, it would be to inform Ms. Sordillo that Zachary had a good day, but she never had any information regarding the school's response to the harassment and bullying. Ms. Sordillo

eventually gave up trying to work with Cabral and went directly to Principal Scott Knief. Knief told Ms. Sordillo that he would monitor the situation. Ms. Sordillo also attempted to contact Zachary's guidance counselor to discuss the harassment, but could only leave messages, which were never returned.

23. Zachary frequently visited the nurse's station to call his mother during the school day to complain about the harassment and bullying.

b. Seventh Grade

24. In the seventh grade, Zachary's bullies found a new method of harassment: by throwing pennies at him. They threw pennies at Zachary when they saw him in the hall while calling him "Stingy Jew" and similar slurs in the process. They sometimes told him that they left pennies in the cafeteria and at Cumberland Farms near his house for him to pick up – implying that he would retrieve the pennies because he was Jewish.

25. Most disturbing, the religious harassment of Zachary occurred in full view of parents, school officials – including but not only Cabral and Knief – and other members of the public.

26. Zachary attended a varsity basketball game once to watch his brother play. While sitting near the top of the stands, J.A. and another boy, K.B., sat near the bottom of the stands and threw pennies at Zachary while calling him derogatory slurs. Parents and other students sat in the stands while this occurred and did nothing.

27. During class at least once, J.A. said "stupid Jew" under his breath when Zachary answered a question incorrectly. The teacher of the class heard the comment but did not say or do anything about it.

28. The religious harassment and bullying of Zachary in the cafeteria was pervasive during seventh grade. Zachary told the cafeteria monitors on at least one occasion that the boys were calling him a "dumb Jew" or similar slurs, but the monitors ignored his complaints.

29. After Ms. Sordillo's repeated complaints, Cabral told her that she would personally monitor the cafeteria, or if she was not available, Knief, the principal, or the Athletic Director Mike Schultz, would.

30. However, the Defendants' only actual corrective action regarding the religious harassment and bullying in the cafeteria was to allow Zachary to eat his lunch in Cabral's office.

31. Frequently during the seventh grade, D.H., S.M., and sometimes J.A. waited for Zachary at his locker between classes. Sometimes they would slam him against the locker; other times they would call him derogatory slurs and throw pennies at him; many times, they would do both.

32. In gym class one day, J.A. was mocking Zachary for being on the B team in the town's recreational basketball league (the A team is the more competitive team). J.A. told Zachary: "They just hate you because you're Jewish." J.A. repeated the harassment throughout the class until he and Zachary became involved in a fight. At the end, Zachary – who had a black eye and a bleeding nose – was suspended for three days, and J.A. received no punishment.

33. Carver Middle High annually holds a Spirit Week in the spring. Students are encouraged to wear clothing and dress in a way that displays pride and individuality. Zachary wore his yarmulke to school one day that week, the one from Israel with the Red Sox insignia. One of his teachers, however, tracked Zachary down in the hallway and ordered him to remove the yarmulke because she found it offensive; she claimed that other people at school were

7

complaining about it. Zachary told the teacher that he was Jewish, but she said that did not matter. As a result, Zachary took off the yarmulke, unhappily.

34. The next day, Ms. Sordillo spoke with the teacher about what happened. She also spoke with Cabral. Neither appreciated that the incident had upset Zachary and offended Ms. Sordillo. There was no effort by school officials, including the Defendants, to discuss the incident further with Zachary or Ms. Sordillo, and no apology was offered.

35. In comparison, students at Carver Middle High frequently wear crosses and other religious symbols as articles of clothing or jewelry without controversy.

36. On May 22, 2013, another boy, J.P., began calling Zachary a "stingy Jew" repeatedly throughout the day. Zachary had a doctor's appointment that afternoon and complained to his doctor about the harassment.

37. On May 28, 2013, Zachary was being harassed in the cafeteria as usual, but this time the harassment escalated to include food throwing. J.D. and S.M. tossed chicken nuggets repeatedly at Zachary from another table. Eventually, Zachary stood up and confronted J.D. A cafeteria monitor saw this and ordered Zachary to the principal's office. When Zachary protested that J.D. had been throwing food and calling him derogatory religious slurs, the monitor sent J.D. and S.M. to the principal's office as well.

38. On his way to the principal's office, Zachary dropped some books off at his locker. J.D. and S.M. tracked him down. J.D. told Zachary that he left pennies at Cumberland Farms for him. After knocking Zachary's books out of his hands, he pushed Zachary into his locker and punched him in the head several times while calling him a "dumb Jew." The beating left Zachary with a huge welt on the left side of his head, bruises along his temple, and a headache for the rest of the day.

8

39. Zachary went to the nurse's office after the beating. School officials sent him home at the end of the day on the school bus without contacting Ms. Sordillo or Mr. Groezinger. When Zachary arrived at home, Ms. Sordillo could tell immediately that he had been beat-up by looking at his face. She did not receive a call from the school until 3:30 p.m., when Cabral called her. Cabral explained that she only was in the cafeteria for fifteen minutes that day before she had to leave (despite her previous promise to monitor the cafeteria personally or have Knief or the Athletic Director Mike Schultz do so).

40. A few weeks after this, Zachary and Ms. Sordillo found a swastika etched in chalk outside their driveway.

41. Each of the above Defendants had actual knowledge of the harassment of Zachary based on his religion and knew that the harassment was pervasive, severe, and objectively offensive so as to create a hostile environment that denied Zachary access to educational programs, opportunities, and activities.

42. The practices and policies of the Defendants were clearly unreasonable in light of the pervasive harassment of Zachary as to give rise to a reasonable inference that the Defendants intended for the harassment to occur and continue.

43. The practices and policies of the Defendants have substantially contributed to the creation of an anti-Semitic environment at Carver Middle High School.

44. The failure of the Defendants to follow the Bullying Plan and adequately train and supervise staff at Carver Middle High School caused Zachary to be subjected to discrimination and harassment based on his religion.

### c. The School's Non-Response

45. The day after Zachary was assaulted and harassed on May 28, 2013, Ms. Sordillo and her mother initiated a meeting with Cabral. Cabral acknowledged that Zachary had been bullied but refused to provide any documentation regarding how she or the school intended to respond.

46. A few weeks later, at a regular meeting regarding Zachary's Individualized Educational Program ("IEP"),[3] Knief assured Ms. Sordillo that school officials had met to discuss Zachary's harassment and bullying, and that Superintendent Elizabeth Sorrell was notified about the issue. However, he said that school officials considered the issue to concern harassment, not bullying.

47. The Defendants treat the religious harassment of Zachary differently than they treat harassment directed against other students. As one example, when a boy named A.T. harassed Zachary on his bus, calling him "Stingy Jew" and stealing his hat, and Ms. Sordillo informed the bus driver, A.T. remained on the bus. In comparison, when a white student harassed a black student on the bus with racial slurs, the white student was kicked off the bus for three days.

48. As required by M.G.L. c. 71, § 37O (the "Ant-Bullying Law"), the School Department has developed a Bullying Prevention and Intervention Plan as required by (the "Bullying Plan"). The Bullying Plan defines "bullying" as:

> The repeated use by one or more students of a written, verbal, or electronic expression or a physical act or gesture or any combination thereof, directed at another student (a "target"), causing one or more of the following:
>
> - physical or emotional harm to the targeted student or damage to his/her property;

---

[3] Zachary has ADHD and receives an IEP for that reason.

- placement of the targeted student in reasonable fear of harm to him/herself or of damage to his/her property;
- a hostile environment at school for the targeted student;
- infringement on the rights of the targeted student at school; or
- material and substantial disruption to the educational process or the orderly operation of the school.

Bullying generally involves "picking on" a student over time and may include conduct such as hitting and shoving; pressuring a student into taking an action he/she does not wish to take; words that involve threats, teasing, putdowns, or name-calling; threatening looks, gestures, or actions; cruel rumors; false accusations; and social isolation.

49. The Bullying Plan requires "school or district staff member, or any staff member of a program housed in [school] facilities . . . to report any instance of bullying or retaliation to the principal or designee." The Bullying Plan further states: "The requirement to report to the principal or designee does not limit the authority of the staff member to respond to behavioral or disciplinary incidents consistent with school or district policies and procedures for behavior management and discipline."

50. The Bullying Plan further establishes a list of ways that the school may respond to reports of bullying:

The principal or designee will take steps to assess the need to restore a sense of safety to the alleged target and/or to protect the alleged target from possible further incidents. Responses to promote safety may include, but are not be limited to:
- creating a personal safety/action plan;
- pre-determining seating arrangements for the target and/or the aggressor in the classroom, at lunch, or on the bus;
- identifying a staff member who will act as a "safe person" for the target;
- altering the aggressor's schedule and access to the target;
- providing "check-ins" with the target with an adult that has been identified as the "safe person" and/or the principal or designee;
- providing "check-ins" with the target aggressor.

51. The Bullying Plan also requires that "the principal or designee will notify the parents/guardians of the target and the parents/guardians of the aggressor" when the school has determined that bullying occurred. The Bullying Plan further states that "[t]he principal or designee will also notify the parents/guardians of the target what action is being taken to prevent further acts of bullying or retaliation" to the extent permitted by law.

52. The Defendants have not responded to the harassment and bullying of Zachary with any of the steps identified in the Bullying Plan as appropriate responses to bullying.

### d. Effect of Harassment on Zachary

53. Since the religious harassment and bullying began in sixth grade, Zachary's grades have dropped. His most recent report card had mostly Cs and Ds.

54. Zachary has difficulty concentrating in class because he worries about what will happen after class or what was said to him before class. Although Zachary has been diagnosed previously with ADHD, he received medication for ADHD well before the harassment began, and only began to have increased difficulty in concentration after the harassment started.

55. At various points in the seventh grade, Zachary commented to Ms. Sordillo that he sometimes wishes he wasn't Jewish. He also hates going to school now. He has said several times to Ms. Sordillo when she drops him off in the morning how he wished he did not have to go specifically because of the harassment and bullying.

56. Zachary did not sign up to play little league baseball this summer because he wanted to avoid the boys who harass him. He still plays recreational basketball, but now plays for a team in another league located in another community. Only one student from Carver is on the team.

### e. Police Action

57. Since the bullying and harassment of Zachary started, Ms. Sordillo made numerous reports to the Carver Police Department ("Police Department"). The Defendants, on the other hand, never contacted the Police Department, not even after Zachary was assaulted on May 28.

58. Unlike the Defendants, the Police Department takes the bullying and harassment of Zachary seriously. When Ms. Sordillo contacted the Police Department about the May 28 assault, the police officer with whom she spoke expressed shock that school officials had not alerted the Police Department about the incident.

59. Recently, the Plymouth County District Attorney's Office and the Office of the Attorney General contacted Ms. Sordillo about Zachary's abuse. On or about July 10, 2013, two of the boys, S.M. and J.D., were arraigned on assault and battery and civil rights charges.

### f. Developments Since Original Complaint Filed

#### i. Ms. Sordillo Loses Her Job

60. Ms. Sordillo worked last school year for the School Department as a bus monitor for special needs students. She continued to work as a bus monitor over the summer.

61. The School Department did not ask Ms. Sordillo to return this coming school year (2013-2014) to serve as a bus monitor, even though, to the best of her knowledge, it invited all or substantially all bus drivers to return to their previous routes. The driver whose bus she monitored was invited back. She is unaware of any bus drivers or monitors who worked over the summer who were not invited back.

62. The School Department did not notify Ms. Sordillo that she had lost her position. Rather, Ms. Sordillo contacted the School Department after learning that other drivers had

received invitations to return for the upcoming school year. She spoke with someone in the School Department who claimed that the school did not have a need for a monitor this year.

*ii. Carver Refuses To Provide Transportation*

63. After the original complaint in this action was filed, a private Jewish school in Massachusetts contacted Ms. Sordillo (through her attorney) and raised the possibility of Zachary attending for the 2013-2014 academic year so he could have a safe learning environment. The school offered Zachary tuition-free enrollment. The school is located forty (40) miles away from his home in Carver, however, and transporting him to and from there will take considerable time and cost a lot in gas. The School Department, however, refused the request of Ms. Sordillo to provide transportation, even one-way.

64. Zachary, nonetheless, is attending the Jewish school so that he can have a safe learning environment. At this time, Ms. Sordillo and Zachary's grandmother intend to provide transportation for him.[4]

## COUNT I

**(42 U.S.C. § 1983: Fourteenth Amendment)**
**(Individual Defendants)**

The actions of the individual Defendants as described above, including, *inter alia*, deliberately disregarding the harassment and physical abuse of Zachary while knowing that it occurred due to his religious affiliation and/or national origin, violates Zachary's right under the Fourteenth Amendment to the United States Constitution to equal protection under the law, causing damages.

---

[4] The school only goes through the eighth grade, so Zachary will need to return to Carver Middle High School next year or attend a vocational school.

## COUNT II

**(42 U.S.C. § 1983: Fourteenth Amendment)**
**(Carver School Department)**

The actions of Defendant Carver School Department as described above, including, *inter alia*, failing to properly train its officials and teachers in identifying, responding to, and preventing religious-based harassment and bullying, failing to comply with its Bullying Prevention and Intervention Plan regarding Zachary and failing to prevent religious-based harassment and bullying of Zachary, violates Zachary's right under the Fourteenth Amendment to the United States Constitution to equal protection under the law, causing damages. This claim is pursued under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

## COUNT III

**(Title VI to the Civil Rights Act of 1964)**

The actions of Defendants as described above, including, *inter alia*, deliberately disregarding the harassment and physical abuse of Zachary while knowing that it occurred due to his Jewish ancestry, constitutes discrimination on the basis of national origin, causing damages.

## COUNT IV

**(42 U.S.C. § 1983: First Amendment)**
**(Carver School Department)**

The actions of Defendant Carver School Department as described above, including, *inter alia*, refusing to employ Ms. Sordillo for 2013-2014 school year as a bus monitor, when it offered employment to all or substantially all bus drivers from the previous year, because she filed this action on behalf of her son, constitutes retaliation for the exercise of her rights to

freedom of speech and freedom to petition the government for the redress of grievances guaranteed under the First Amendment to the United States Constitution, causing damages.

WHEREFORE, Plaintiff prays this Court:

1. ORDER the Defendants to take all necessary and appropriate actions to prevent the harassment and bullying of Plaintiff;

2. ORDER the Defendants to comply with its Bullying Prevention and Intervention Plan in responding to the harassment and bullying of Plaintiff;

3. ORDER the Defendants to pay compensatory damages to Plaintiff for emotional distress;

4. Order the Defendants to pay punitive damages and reasonable attorneys' fees;

5. Any further relief as is just and necessary.

Respectfully submitted,

PLAINTIFFS ZACHARY GROEZINGER, a minor, by his mother Jennyfer Sordillo and father Robert Groezinger, and JENNYFER SORDILLO,

By Their Attorneys,

    **/s/ Joseph L. Sulman**
Joseph L. Sulman, BBO # 663635
David I. Brody, BBO # 676984
Law Office of Joseph L. Sulman, Esq.
185 Devonshire Street, Suite 502
Boston, Massachusetts 02110
(617) 521-8600
jsulman@sulmanlaw.com

August 28, 2013

CERTIFICATE OF SERVICE

I hereby certify that I served this amended complaint on all counsel of record via the Court's ECF system on August 28, 2013.

/s/ Joseph Sulman
Joseph Sulman