# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO. 1:13-cv-11814-FDS

_____
ZACHARY GROEZINGER, a minor by his parents,    )
Jennyfer Sordillo and Robert Groezinger, and     )
JENNYFER SORDILLO                           )
     Plaintiffs,                               )
                                       )
vs.                                       )
                                       )
CARVER SCHOOL DEPARTMENT,             )
CHRISTINE CABRAL, individually and in her official capacity )
as Assistant Principal of Carver Middle High School,    )
and SCOTT KNIEF, individually and in his official capacity as )
Principal of Carver Middle High School,          )
     Defendants.                           )
_____)

## JOINT PRETRIAL MEMORANDUM

Pursuant to Local Rule 16.5(D), the parties submit the following Joint Pretrial Memorandum:

## I.   Concise Summary of the Evidence:

### a.  Offered by the Plaintiffs:

Plaintiffs expect the evidence to show that Zachary Groezinger was bullied and harassed due to his Jewish heritage relentlessly during his sixth and seventh grade years at Carver Middle High school ("CMH") and that Defendants were clearly unreasonable in failing to address this conduct adequately. The evidence will show that the harassment began the summer before Zachary's sixth grade. The evidence will show that Zachary was physically assaulted by several students at a Halloween-related event on October 28, 2011 at CMH, and that these students stole money from him and called him derogatory anti-Semitic slurs. The evidence will show that his mother, Plaintiff Jennyfer Sordillo, reported the assault immediately, and Ms. Sordillo and Zachary's grandmother reported the student's anti-Semitic slurs a few days later. The evidence will further show that about a week after this, the same group of students were observed making Heil Hitler Nazi salutes to Zachary numerous times in the school. The evidence will show that school officials disciplined the students for this conduct but did not take any action to prevent the recurrence of the anti-Semitic harassment, or investigate the incidents adequately to determine whether the harassment was ongoing or a pattern of similar behavior.

The evidence will show that the anti-Semitic harassment of Zachary, including Heil Hitler Nazi salutes and anti-Semitic slurs, continued during the sixth grade. Ms. Sordillo contacted school officials, most frequently Assistant Principal Christine Cabral, repeatedly

during the year about the conduct. The evidence will show that school officials did not take any notes of these calls or investigate any of the concerns raised by Ms. Sordillo after early November 2011.

The evidence will show that school officials, including Cabral, received training on responding to harassment and bullying in the summer of 2010. The training instructed school officials to investigate every report of bullying and harassment and take written notes of all reports. The training also instructed school officials to contact the student who complained about the harassment after the investigation is complete to determine whether there has been a recurrence. The evidence will show that Defendants established a Bullying Prevention and Intervention Plan in December 2010 that required school officials to substantially comply with this training. The evidence will show that the Defendants consistently failed to follow this plan.

The evidence will show that even before Zachary started at CMH, the Defendants had a problem with anti-Semitic harassment of students at CMH. In December 2010, a Jewish student was harassed with anti-Semitic slurs and physically assaulted at a school function. The evidence will show that the aggressor was suspended and that, at the request of his parents, a local rabbi met with the aggressor and reported to the school that the aggressor had learned the anti-Semitic conduct from other students. The evidence will show that an investigation of this incident revealed that the aggressor had been harassing the Jewish student prior to the school function by calling her anti-Semitic slurs and throwing coins at her.

The evidence will also show that in March 2012, another Jewish student at CMH reported having coins thrown at him or her. In 2014, the evidence will show that a student was punished at CMH for drawing a swastika on his math test.

The evidence will show that the anti-Semitic harassment and bullying of Zachary continued in his seventh grade, the 2012-2013 academic year. The regular slurs continued, and the evidence will show that students began throwing coins at Zachary and telling him to pick them up. The evidence will show that Ms. Sordillo contacted school officials repeatedly about this conduct, and Zachary's father, Robert Groezinger, also contacted school officials, but their reports were never investigated. The evidence will show that in January 2013, Zachary was attending a varsity basketball game and several students threw coins at him in the stands and made anti-Semitic remarks to him. The evidence will further show that none of these students were disciplined for their conduct. Later in January 2013, the evidence will show that Ms. Sordillo told school officials that Zachary hated going to school and did not want to be Jewish anymore.

The evidence will further show that the anti-Semitic harassment and bullying of Zachary continued to the end of the school year in 2012-2013. The evidence will show that in May, three anti-Semitic incidents occurred. The evidence will show that the last of these incidents was a physical assault by two of the students who engaged in the Heil Hitler salutes in the sixth grade. These students were eventually charged by local police with civil rights violations against Zachary.

The evidence will also show that Zachary suffered significant emotional distress as a result of the anti-Semitic harassment and bullying and Defendants' failure to adequately address

the conduct. The evidence will show that Defendants' failure to address the anti-Semitic harassment and bullying of Zachary deprived him of access to educational benefits.

The evidence will further show that as a result of the Defendants failure to address the anti-Semitic bullying and harassment of Zachary, he attended a private school for his eighth grade. The evidence will show that transporting Zachary to and from this school cost Zachary's parents several thousand dollars in fuel and automobile maintenance costs.

### b. Offered by the Defendants:

This is an action in which the Plaintiffs – Zachary Groezinger ("Zachary"), a minor, by his parents, Jennyfer Sordillo and Robert Groezinger, and Jennyfer Sordillo, individually – allege that Zachary was bullied and harassed during his sixth and seventh grade years at Carver Middle High School ("CMHS" or the "School"), and that the Defendants – the Carver School Department ("CSD"), Principal Scott Knief and Assistant Principal Christine Cabral[1] – violated Zachary's rights under the Equal Protection Clause of the Fourteenth Amendment and under Title VI of the Civil Rights Act of 1964 by failing to prevent, and to protect Zachary from, the bullying and harassment. Jennyfer Sordillo further alleges that the CSD retaliated against her for filing the original Complaint in this action by failing to re-hire her as a bus monitor for the 2013-2014 school year, and that this retaliation constitutes a violation of her First Amendment rights.

With respect to the claims concerning the alleged bullying and harassment of Zachary, the evidence will show that during Zachary's sixth-grade year at CMHS, the Defendants received substantiated reports of only two incidents in which Zachary was bullied, and that anti-Semitic behavior was only reported with respect to one of these incidents. The first incident occurred on the evening of October 28, 2011, when Zachary attended a School-sponsored event held at the CMHS called "Haunted Hallways." During this event, three students allegedly assaulted Zachary, called him derogatory slurs, and stole money from him. The Plaintiffs reported this incident to the Defendants, but did not report that any anti-Semitic comments were made during the assault. The Defendants investigated the incident by interviewing Zachary, the alleged assailants, and faculty, student and adult witnesses, obtaining written statements, and reviewing video surveillance footage. The Defendants issued a suspension to the student determined to have physically assaulted Zachary, and notified the student's parents.

The second incident occurred a few days later in November of 2011, when Jennyfer Sordillo reported to Assistant Principal Cabral that two students had been making the "Heil Hitler" gesture at Zachary. This was the first time that the Defendants were notified of allegations that students were making anti-Semitic comments or conduct directed at Zachary. Assistant Principal Cabral investigated the incident by, *inter alia*, interviewing Zachary and the alleged perpetrators and reviewing video surveillance footage. All four of the students found to have made the gesture were issued suspensions, and those students who made the "Heil Hitler" gesture and were also involved in the Haunted Hallways incident were issued longer suspensions because it was their second offense toward Zachary. Additionally, all of the perpetrators were required to meet with the school adjustment counselor, who spoke with them about the gravity of their offensive behavior. The School officials also contacted the parents of all involved students.

---

[1] In this memorandum, Principal Knief and Assistant Principal Cabral are collectively referred to as the "Individual

The evidence will show that the Plaintiffs did not report, and the Defendants were unaware of, any other anti-Semitic bullying incidents allegedly experienced by Zachary during his sixth grade year at CMHS, including, but not limited to, further instances of the offensive salute

The Defendants did not receive another report that Zachary was being bullied because he was Jewish until January of his seventh grade year (January 2013), fourteen months after the "Heil Hitler" incident. At that time, Jennyfer Sordillo reported to Assistant Principal Cabral that Zachary was being bullied because he is Jewish, and that he did not want to come to school anymore. Id. Assistant Principal Cabral referred Zachary to the school adjustment counselor who, in turn, met with Zachary on two occasions. On both occasions, Zachary told the adjustment counselor that the bullying had stopped, and that "everything was fine."

The Defendants were not made aware of any further anti-Semitic bullying behavior directed at Zachary until May of 2013. On May 14, 2013, the Defendants issued a suspension to a student who asked Zachary "if his laser pointer cost him a penny." On May 22, 2013, Jennyfer Sordillo reported to Assistant Principal Michael Schultz, that a student had called Zachary a "stingy Jew." Upon receipt of this report, Assistant Principal Schultz interviewed the student and four witnesses. As a result of his investigation, Assistant Principal Schultz issued a suspension to the offending student, and contacted the student's parents. Assistant Principal Schultz also spoke with Zachary about the incident, but Zachary did not report any additional bullying to him.

On May 28, 2013, two students allegedly threw food at Zachary during lunch, and then physically assaulted him at his locker while calling him derogatory names. That afternoon, Assistant Principal Cabral conducted an investigation, which consisted of interviewing Zachary, the two boys, two female student witnesses, and four faculty members. The Defendants promptly issued ten-day suspensions to the two offenders, as well as a range of other consequences. The Defendants also arranged for Zachary to speak with the school adjustment counselor regarding the alleged bullying, and met with Zachary's parents to develop a comprehensive plan for his safety upon his return to school. The record clearly establishes that the Plaintiffs did not report, and the Defendants were unaware of, any other anti-Semitic bullying incidents allegedly experienced by Zachary during his seventh grade year at CMHS.

Although the alleged behavior of Zachary's bullies was reprehensible, the Defendants cannot be held liable for their failure to prevent it. The Defendants lacked actual knowledge of most of the alleged anti-Semitic bullying behavior, and had no authority to prevent or discipline students for behavior that occurred off of school grounds and/or while school was not in session. The evidence will show that the Plaintiffs never contacted the school nurse, lunchroom monitors, or teachers, who were responsible for monitoring Zachary and his alleged bullies on a daily basis. Additionally, the Plaintiffs rarely reached out to even those School staff members with whom they had a personal relationship – such as the school adjustment counselor, Sean Sullivan, and/or Assistant Principal Michael Schultz – to report the alleged bullying. Furthermore, despite the fact that the Defendants reached out to Zachary on numerous occasions to discuss the alleged bullying, Zachary purposefully avoided telling them about the harassment, allegedly out of fear of retaliation. This is notwithstanding the fact that Zachary attended a nine-week health class at

CMHS in which he studied bullying extensively, and learned the importance of a victim reporting bullying behavior (and the various mechanisms for doing so) to school officials.

Each and every time the Defendants *did* receive a report of bullying or harassment, they conducted a prompt, thorough investigation, issued appropriate disciplinary consequences to the offender(s), and took other corrective actions to prevent recurrence and to provide support to Zachary. The Defendants' responses to the bullying and harassment of which they were made aware were not clearly unreasonable in light of the circumstances known to them at the time; therefore, the Defendants did not act with deliberate indifference. Moreover, the Individual Defendants are entitled to qualified immunity, not only because Zachary did not suffer a constitutional violation, but because no reasonable school official, similarly situated to the Defendants, would have understood that the comprehensive steps taken by the Defendants in response to the reported incidents of bullying harassment were unlawful in light of clearly established law. Nor did the CSD have a policy or practice of failing to investigate and respond to reported incidents of bullying and harassment, much less such a policy or practice that was so well-settled and widespread as to practically have the force of law.

Moreover, the Plaintiffs' claims that the alleged bullying and harassment had a deleterious effect on Zachary's academic performance, attendance, and overall wellbeing cannot be substantiated. Zachary himself testified that he did not skip school, or attempt to skip school, in order to avoid his bullies, and his attendance during his sixth and seventh was exemplary. Zachary's mother even testified that he "loved" school. Following sixth grade, she agreed with the IEP Team's description of Zachary as "an affable, 'happy-go-lucky' 12-year old . . . [who] seems to have a large peer group and has positive relationships with them." Following seventh grade, Ms. Sordillo agreed that Zachary was "friendly and outgoing," "like[d] to be active," and "will volunteer to be a part of any demonstration in the classroom setting." Indeed, Ms. Sordillo was "pleased with many of Zach's accomplishments this year." With respect to his academic performance, Zachary's grades fluctuated only slightly while he was enrolled at CMHS. The evidence will show that this was not because he was too distracted by the bullying at school to concentrate in class but, rather, because he failed to complete his homework assignments. The alleged bullying and harassment was not so severe, pervasive and objectively offensive that it effectively barred Zachary's access to an educational opportunity or benefit.

With respect to Jennyfer Sordillo's First Amendment retaliation claim, the evidence will show that during the 2012-2013 school year, Ms. Sordillo was employed as a bus monitor for preschool students. At the end of the 2012-2013 school year, Ms. Sordillo was not re-hired as a bus monitor for the following school year because the CSD did not require a preschool bus monitor for the 2013-2014 school year. However, on July 8, 2013, Ms. Sordillo was offered a job as a bus monitor for the summer program, which she accepted. On June 30, 2013, the Plaintiffs filed their original Complaint in this action. The evidence will show that at the beginning of the 2013-2014 school year (after the Plaintiffs' filed their original Complaint), the CSD determined, based on concerns raised by parents, that it had a need for a special education bus monitor. The CSD posted the job opening for the special education bus monitor position on the same day that the Plaintiffs filed their First Amended Complaint adding Jennyfer Sordillo's First Amendment claim. The CSD called Ms. Sordillo and sent her letters inquiring about her interest in the job, and ultimately sent her an offer of employment, but she never responded. The

filing of the Plaintiffs' Complaint was not a factor – much less a substantial or motivating factor – in the CSD's decision not to hire a preschool bus monitor for the 2013-2014 school year and/or in the CSD's later decision to hire a special education bus monitor for the 2013-2014 school year.

**II.     Facts Established by Pleadings, Stipulations or Admissions:**

1. Zachary Groezinger is currently fifteen years old and a member of the Jewish faith.

2.  Zachary resides in Carver, MA; he has lived there since approximately 2005.

3. Jennyfer Sordillo is Zachary's mother.  Jennyfer has resided with Zachary in Carver, Massachusetts since approximately 2005.

4. Robert Groezinger ("Robert") is Zachary's father.

5. The Town of Carver, Massachusetts, is a municipality located in Plymouth County. The Town, through its subdivision, the named Defendant, the Carver School Department, operates a public school system, which includes the Carver Middle High School.  CMHS is a combined middle and high school for students in grades six through twelve.

6. Scott Knief is the principal of CMHS.  Principal Knief has been the principal of the High School since 2006; he has been the Principal of the Middle School and High School since the two schools combined in 2009.

7. Christine Cabral is an assistant middle school principal at CMHS.  She has held this position since 2003.

8. Michael Schultz is an assistant middle school principal at CMHS.  He has held this position since 2010. Assistant Principal Schultz also serves as the athletic director of CMHS.  He has held this position since 2006.

9. Zachary was enrolled in the Carver public school system until the eighth grade. Zachary attended the sixth and seventh grade – *i.e.*, the 2011-2012 and 2012-2013 academic years, respectively – at CMHS.

10. From September 2013 to June 2014, Zachary attended the eighth grade at Kehillah Schechter Academy, Norwood, MA.

11. Zachary re-enrolled in the Carver school system in September of 2014. From September 2014 to the present, Zachary attended (and attends) the ninth grade at CMHS.

12. Zachary was not a victim of bullying while he was in elementary school in the Carver public school system.

13. The first time that the Plaintiffs reported to the Defendants that Zachary was a victim of anti-Semitic bullying was in October of 2011 (*i.e.*, the fall of Zachary's sixth-grade year at CMHS).

**III.    Contested Issues of Fact:**

All other issues of fact are contested and subject to resolution by the trier of fact.

**III.    Jurisdictional Questions:**

No questions exist as to the Federal Court's jurisdiction over this lawsuit based upon the Plaintiffs' claims under 42 U.S.C. Sec. 1983.

**IV.    Questions Raised by Pending Motions:**

  **a.   Offered by the Plaintiffs:**

Plaintiffs have filed a motion to exclude the testimony of Defendants' expert Michael Greene. Plaintiff intend to file several motions *in limine* concerning anticipated evidentiary issues.

**b. Offered by the Defendants:**

The Defendants have a filed a motion to sever and stay the trial on Count II of the Plaintiffs' First Amended Complaint against the CSD. Additionally, the Defendants intend to file several Motions *in Limine* concerning anticipated evidentiary issues. They also intend to file a Motion *in Limine* to preclude the testimony of Plaintiffs' proposed expert witness, Stephen Wessler, Esq.

## V. Issues of Law and Evidentiary Questions (citing Legal Authority):

**a. Offered by the Plaintiffs:**

Plaintiffs refer the Court to their summary judgment opposition, which provides their argument on the relevant legal issues in detail. For summary purpose, the following is the Plaintiff's position on the most significant legal issues expected to arise during trial.

### Title VI Claim

Title VI prohibits recipients of federal funds[2] from discriminating on the basis of race, color, or national origin in the provision of educational services. 42 U.S.C. § 2000e(d). This includes discrimination based on a student's Jewish ancestry. *See T.E. v. Pine Bush Central School District*, 2014 U.S. Dist. LEXIS 155808 at *50 (S.D.N.Y. Nov. 4, 2014) (citing cases). Under Title VI and the Equal Protection Clause, a school administration's deliberate indifference to peer-to-peer harassment based on protected status is the equivalent of intentional discrimination. Proving a claim requires establishing: 1) the plaintiff's harassment was due to his protected status and sufficiently severe, pervasive and objectively offensive so that it altered his education; 2) the school district had actual notice of the harassment; and 3) the school was deliberately indifferent to the harassment. *See T.K. v. New York City Dept. of Education*, 779 F. Supp. 2d 289, 314 (E.D.N.Y. 2011); *Shivley*, 2014 U.S. App. LEXIS 16671, *20. Under Title VI, a school district's liability can be established by showing that "a single school administrator with authority to take corrective action responded to harassment with deliberate indifference." *See Fitzgerald v. Barnstable Sch. Comm*., 555 U.S. 246, 257 (2009) (interpreting Title IX).[3]

Deliberate indifference is found where the school's response to the harassment or lack thereof was clearly unreasonable in light of the known circumstances. *See Vance v. Spencer County Pub. Sch. Dist*., 231 F.3d 253, 260 (6th Cir. 2000). Making this showing does not require proof that "the defendant fully appreciated the harmful consequences of that discrimination, because deliberate indifference is not the same as action (or inaction) taken maliciously or sadistically for the very purpose of causing harm." *Shivley*, 2014 U.S. App. LEXIS 16671, *20. A school's failure to follow its policies and procedures regarding investigating harassment can

---

[2] Defendants do not deny that Carver is a recipient of federal funds and thus covered under Title VI.

[3] "Congress modeled Title IX after Title VI of the Civil Rights Act of 1964 and passed Title IX with the explicit understanding that it would be interpreted as Title VI was." *Id.* at 258 (internal citations omitted).

support a finding that its response was clearly unreasonable. 59 Fed. Reg. 11448, 11450 (when investigating peer-to-peer harassment under Title VI, OCR will consider whether the response was consistent with established institutional policies); *Doe v. Gladstone Sch. Dist.*, 2012 U.S. Dist. LEXIS 78591 at *24 (D. Or. June 6, 2012); *Doe v. Norwalk Cmty. College*, 2007 U.S. Dist. LEXIS 51062 at *14 (D. Conn. July 16, 2007). Moreover, continued use of ineffective measures is clearly unreasonable and supports a finding of deliberate indifference. *See Gladstone School District,* 2012 U.S. Dist. LEXIS 78591, *23-24.

Peer-to-peer harassment must be sufficiently severe, pervasive, and objectively offensive that it deprived the victim of access to educational benefits or opportunities provided by the school. *See Bryant v. Indep. Sch. Dist. No. I-38*, 334 F.3d 928, 934, (10th Cir. 2003). Under federal regulations, this means that "the harassment . . . would have adversely affected the enjoyment of some aspect of the recipient's educational program by a reasonable person, of the same age and race as the victim, under similar circumstances." 59 Fed. Reg. 11448; *Fennell v. Marion Indep. Sch. Dist.,* 963 F. Supp. 2d 623, 646 (W.D. Tex. 2013). "Educational benefits include an academic environment free from racial hostility." *T.E.*, 2014 U.S. Dist. LEXIS 155808, *53.

### Equal Protection Claim (42 U.S.C. § 1983)

The Equal Protection Clause prohibits states from making distinctions that burden a fundamental right, target a suspect class, or intentionally treat one individual differently from others similarly situated without any rational basis. *See Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010). This prohibition applies to discrimination of students based on their religious or ethnic status as Jews. *See Shively v. Green Local Sch. Dist. Bd. of Educ*, 2014 U.S. App. LEXIS 16671 at *19-20 (6th Cir. Aug. 27, 2014)

A municipality may be found liable under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Doe v. Bradshaw,* 2013 U.S. Dist. LEXIS 131915 at *22 (D. Mass. Sept. 16, 2013), *citing Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011). School principals and superintendents may be policymaker for purposes of Section 1983. *See City of Canton v. Harris*, 489 U.S. 378, 388-89.

Here, several policies and customs of the Carver School Department, as implemented by Cabral and Knief, allowed the harassment of Zachary to occur. First, Carver had a custom of failing to investigate past incidents of harassment or bullying between an aggressor and a target. Second, Carver had a custom of not reporting anti-Semitic harassment of Jewish students as a civil rights issue. Third, and relatedly, these customs resulted from Carver's failure to properly train its school officials in reporting and responding to anti-Semitic harassment.

The individual defendants Knief and Cabral are not entitled to qualified immunity for the Equal Protection claim, because the prohibition against deliberate indifference to harassment in

schools had been clearly established for fifteen years. *T.E. v. Pine Bush Cent. Sch. Dist.*, 2014 U.S. Dist. LEXIS 155808 at \*95-96 (S.D.N.Y. Nov. 3, 2014); *Shively v. Green Local Sch. Dist. Bd. of Educ*, 2014 U.S. App. LEXIS 16671 at \*22-23 (6th Cir. Aug. 27, 2014)

    **b. Offered by the Defendants:**

        **i. Whether the Defendants violated Zachary's rights under the Equal Protection Clause of the Fourteenth Amendment?**

In order for the Plaintiffs to prevail on their claims for violation of the Equal Protection Clause of the Fourteenth Amendment they must prove that, compared to others similarly situated, Zachary received disparate treatment, and that his selection for disparate treatment was based on his membership in a protected class. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264-65 (1977); Rios-Colon v. Toledo-Davila, 641 F.3d 1, 4 (1st Cir. 2011). Proof of disparate treatment is not enough; the Plaintiffs must establish discriminatory intent. Id. The Plaintiffs may establish the necessary element of discriminatory intent by proving that the Defendants acted with "deliberate indifference" to alleged anti-Semitic bullying. Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 643 (1999); Porto v. Town of Tewksbury, 488 F.3d 67 (1st Cir. 2007). The deliberate indifference standard outlined in Davis is a narrow one. Id., at 644-45. See Santiago v. Puerto Rico, 655 F.3d 61, 73 (1st Cir. 2011) (deliberate indifference standard "has considerable bite"). In order to be actionable, a defendant's deliberate indifference must "'subject[]' its students to harassment, *i.e.,* at a minimum, cause[] students to undergo harassment or make[] them liable or vulnerable to it." Davis, 526 U.S. at 630. A defendant is deliberately indifferent to student-on-student harassment when its "response to the harassment or lack thereof is clearly unreasonable in light of known circumstances." Id., at 648; Porto, 488 F.3d at 72. The harassment must take place in "circumstances wherein the [defendant] exercises substantial control over both the harasser and the context in which the known harassment occurs." Davis, 526 U.S. at 645. "Only then can the [defendant] be said to 'expose' its students to harassment or 'cause' them to undergo it." Id. Additionally, the acts of harassment must actually be "known" to the defendant. Id. at 647; Porto, 488 F.3d at 72. Constructive knowledge is not sufficient. Finally, the harassment must be "so severe, pervasive and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Davis, 526 at 650.

        **ii. Whether the CSD violated Zachary's rights under Title VI of the Civil Rights Act of 1964?**

Title VI prohibits a recipient of federal funds from discriminating on the basis of race, color, or national origin. 42 U.S.C. §§ 2000D, *et seq.* Under Title VI, funding recipients can only be held liable for *intentional* violations of the Statute. Alexander v. Sandoval, 532 U.S. 275, 280–81 (2001). Just as with their Fourteenth Amendment claims, the Plaintiffs may establish the necessary element of discriminatory intent necessary for their Title VI claims by proving that the Defendants acted with "deliberate indifference" to alleged anti-Semitic bullying. See, e.g., Williams v. Port Huron Sch. Dist., 455 F. App'x 612 (6th Cir. 2012); Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655, 664 (2d Cir. 2012).

**iii. Whether the alleged instances of bullying and harassment took place in circumstances where the Defendants exercised substantial control over both the bully(ies)/harasser(s) and the context in which the harassment occurred?**

In order to establish the element of "deliberate indifference" necessary to succeed on their claims under the Title VI and the Fourteenth Amendment, the Plaintiffs must establish, *inter alia*, that the bullying and harassment took place in "circumstances wherein the [Defendants] exercise[d] substantial control over both the harasser and the context in which the known harassment occur[red]." Davis, 526 U.S. at 645. A defendant cannot be directly liable for deliberate indifference where it lacks the authority to take remedial action. Id. at 644. Instead, the deliberate indifference standard "necessitates a showing that [the defendant] acted with deliberate indifference towards known acts of harassment occurring in its programs or activities," and "imposes liability on a [defendant] only where 'an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has *actual knowledge* of discrimination in the [defendant's] programs and fails adequately to respond.'" Doe v. Pike Sch., Inc., 2014 WL 413207, at *2 (D. Mass. Feb. 4, 2014) (quoting Santiago, 655 F.3d at 73; Gebser v. Lago VistaIndep. School Dist., 524 U.S. 274, 290 (1989)). A defendant exercises the requisite control where the harassment occurs during school hours and on school grounds. Davis, 526 U.S. at 646.

**iv. Whether the Defendants had actual knowledge of the alleged instances of bullying and harassment?**

In order to have been deliberately indifferent to discriminatory bullying or harassment, the acts of harassment must actually be "known" to the Defendants; constructive knowledge is not sufficient. Davis, 526 U.S. at 645.

**v. Whether the Defendants' acted with deliberate indifference to the instances of anti-Semitic bullying and harassment of which they had**

**actual knowledge by responding in a manner which was clearly unreasonable in light of known circumstances?**

Under the "stringent standard" imposed by the Supreme Court, a finding of deliberate indifference depends on the adequacy of a defendants' response to the harassment. See Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 410 (1997); Hayut v. State Univ. of N.Y., 352 F.3d 733, 750 (2nd Cir. 2003). Specifically, a defendant's actions are only deliberately indifferent if they were "*clearly* unreasonable in light of the known circumstances." Davis, 526 U.S. at 648 (emphasis added). When weighing the adequacy of a response, a court must accord sufficient deference to the decisions of school disciplinarians. See id., 526 U.S. at 648. Responses which courts have found sufficiently reasonable so as to preclude school liability for peer-on-peer harassment include: conducting individual and/or group interviews with accused bullies to determine who is guilty of the offending behavior; instructing accused bullies to stop taunting or harassing the victim; holding mediation sessions between the victim and the bullies; speaking with or sending letters to the parents of the alleged bullies to discuss their disciplinary problems; counseling the victim; threatening the bullies with suspension; suspending the bullies from school and/or bus privileges; and/or, revoking the bullies' recess and/or lunch privileges. See, e.g., S.S. v. E. Kentucky Univ., 532 F.3d 445, 455 (6th Cir. 2008); Yap v. Oceanside Union Free Sch. Dist., 303 F. Supp. 2d 284, 294 (E.D.N.Y. 2004). "[t]he fact that measures designed to stop harassment prove later to be ineffective does not establish that the steps taken were clearly unreasonable in light of the circumstances known by [the school officials] at the time." Porto, 488 F.3d at 74. See also Yap, 303 F. Supp. 2d at 294 ("[T]he ultimate failure of these measures does not mean that Plaintiffs have created a jury question with regard to deliberate indifference.") citing Crispim v. Athanson, 275 F.Supp.2d 240, 248 (D. Conn. 2003); Doe ex. rel. Doe v. Dallas Ind. Sch. Dist., 220 F.3d 380, 388 (5th Cir. 2000) (erroneous and ineffective conclusions by an investigating principal were not clearly unreasonable). "Deliberate indifference… requires something more than a proffer indicating the ultimate inadequacy of preventative and curative measures. Instead, the measures taken must be so inadequate that a degree of discriminatory intent may be inferred— allowing the trier of fact to conclude that Defendants intended for the discrimination to occur." Yap, 303 F. Supp. 2d at 294 (citing Gant, 195 F.3d at 140).

vi. **Whether the anti-Semitic bullying and harassment experienced by Zachary was sufficiently severe, pervasive and objectively offensive that it effectively barred Zachary's access to educational benefits or opportunities?**

In order to satisfy the deliberate indifference standard set forth in Davis, the Plaintiffs must also demonstrate that the alleged harassment that was

"so severe, pervasive, **and** objectively offensive that it **effectively bar[red]** the [Zachary's] access to an educational opportunity or benefit." Id., at 633 (emphasis added). To be severe, pervasive and objectively offensive, the harassment must so undermine and detract from the victim's educational experience that he is effectively denied equal access to education. Id., at 652. To be actionable, the harassment "must have a 'concrete, negative' effect" on the victim's education. Id.; Gabrielle M. v. Park Forest-Chicago Heights, Illinois Sch. Dist. 163, 315 F.3d 817, 821-825 (7th Cir. 2003) (discussed with approval by Porto v. Town of Tewksbury, 488 F.3d 67 (1st Cir. 2007)). Such concrete, negative effects include dropping grades, or becoming homebound or hospitalized due to harassment or physical violence. Gabrielle M., 315 F.3d at 821-825.

**vii. Whether the Individual Defendants are entitled to qualified immunity?**

Qualified immunity shields government officials performing discretionary functions from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, (1992); Lowinger v. Broderick, 50 F.3d 61, 65 (1st Cir. 1995); Febus-Rodriquez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994). Qualified immunity provides an opportunity to immunity from suit rather than a mere defense to liability. Mitchell v. Forsyth, 105 S.Ct. 2806, 2815 (1985). The doctrine of qualified immunity "requires a constitutional right to be clearly established so that public officials are on notice that this conduct is in violation of that right." Frazier v. Bailey, 957 F.2d 920, 930 (1st. Cir. 1992). The focus should be not on the merits of the plaintiff's underlying claim, but instead on the objective legal reasonableness of the official's conduct as measured by reference to clearly established law and the information the official possessed at the time of the allegedly unlawful conduct. Lowinger v. Broderick, 50 F.3d 61, 65 (1st Cir. 1995); Febus-Rodriguez, at 91. The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Lowinger at 65. See also Hunter v. Bryant, 502 U.S. 224, 229 (1991). The First Circuit has construed the framework for analyzing qualified immunity to consist of three inquiries: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004). ("[T]he relevant legal rights and obligations must be particularized enough that a reasonable official can be expected to extrapolate from them and conclude that a certain course of conduct will violate the law…. Consequently, if the operative legal principles are clearly established only

at a level of generality so high that officials cannot fairly anticipate the legal consequences of specific actions, then the requisite notice is lacking. The bottom line is that the qualified immunity defense prevails unless the unlawfulness of the challenged conduct is 'apparent.'" Savard v. Rhode Island, 338 F.3d 23, 28 (1st Cir. 2003)

viii. **Whether the Plaintiffs can establish municipal liability on their Section 1983 claim against the CSD for violations of Zachary's Equal Protection rights under the Fourteenth Amendment?**

A municipal entity such as the CSD cannot be held liable under Section 1983 on a theory of *respondeat superior*. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 665 (1978). Therefore, in order to prevail on a Section 1983 claim against a municipality, a plaintiff must demonstrate that his harm was caused by a constitutional violation and, if so, that the municipality was responsible for that violation. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 121 (1992). Furthermore, if no municipal actor has violated any protected right of the plaintiff, the plaintiff cannot prevail on a Section 1983 claim against the municipality. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam); Pittsley v. Warish, 927 F. 2d 3, 9 n.4 (1st Cir. 1991). A local government, may, however, be held liable under Section 1983 if it deprives a claimant of a constitutional right through "a policy statement, ordinance, regulation, or decision officially adopted or promulgated." Smith v. City of Boston, 413 Mass. 607, 610 (1992), citing Monell, supra, 436 U.S. at 690. However, out of concern that municipal liability based on fault might collapse into de fact *respondeat superior*, the Supreme Court "set a very high bar for assessing municipal liability under Monell." Young v. City of Providence, 404 F.3d 4, 26 (1st Cir. 2005). Therefore, in the absence of formal government action, liability may only be imposed if the plaintiff's rights were violated by the existence of a widespread practice that, although not authorized by law or express government policy, was "so permanent and well settled as to constitute a 'custom or usage' with the force of law." St. Louis v. Praprotnik, 485 U.S. 112, 117 (1988). Moreover, a plaintiff must show "a direct link between the municipality's policy and the constitutional violation." Bowen v. City of Manchester, 966 F.2d 13, 18 (1st Cir. 1992).

ix. **Whether the CSD violated Jennyfer Sordillo's First Amendment Rights?**

In order to prevail on a Section 1983 claim of retaliation for First Amendment activity, a plaintiff must show: (1) that her conduct was constitutionally protected; and, (2) that such conduct was a "substantial" or "motivating" factor in the defendant's retaliatory action. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287. See also Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 16 (1st Cir. 2011); Centro

Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 10 (1st Cir. 2005). This showing necessitates proof by the plaintiff of a causal connection between the allegedly protected speech and the allegedly retaliatory response. Gonzalez-Droz, 660 F.3d at 16, citing Davignon v. Hodgson, 524 F.3d 91, 106 (1st Cir. 2008). Temporal proximity alone may, in certain circumstances, support an inference of retaliation. Gonzalez-Droz, 660 F.3d at 16 (citing Philip v. Cronin, 537 F.3d 26, 33 (1st Cir.2008)). However, the cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality uniformly hold that the retaliatory conduct must have occurred very closely after the protected activity. Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001); Philip, 537 F.3d at 33 (retaliatory termination occurred one to two after protected conduct). Further, because her First Amendment claim is against the CSD, Ms. Sordillo must prove that an unconstitutional custom or policy adopted or condoned by her employer was the cuase of her damages and unconstitutional deprivation. Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989).

## VI. Requested Amendments to Pleadings:

The Plaintiff seeks to substitute the Town of Carver (the "Town") for the named defendant, the Carver School Department ("CSD") because the CSD is not a separate and distinct legal entity from the Town and, therefore, is not subject to suit. The Defendants assent to this amendment.

## VII. Probable Length of Trial

The parties estimate that the probable length of trial will be approximately seven (7) full trial days.

## VIII. Witness Names and Addresses:

### a. Offered by the Plaintiffs:

1. Zachary Groezinger, c/o Plaintiff's Counsel: Factual testimony

2. Jennyfer Sordillo, c/o Plaintiff's Counsel: Factual testimony

3. Robert Groezinger, c/o Plaintiff's Counsel: Factual testimony

4. Ellen Sordillo, c/o Plaintiff's Counsel: Factual testimony

5. Lola Norsworthy, c/o Plaintiff's Counsel: Factual testimony

6. Cody Sordillo, c/o Plaintiff's Counsel: Factual testimony

7. Christine Cabral c/o Defendant's Counsel: Factual testimony

8. Scott Knief, c/o Defendant's Counsel: Factual testimony

9. Stephen Wessler, c/o Plaintiff's Counsel: Expert testimony

Additionally, if the need arises Plaintiffs may call the following witnesses:

10. Michael Schultz, c/o Defendant's Counsel: Factual testimony

11. Sean Sullivan, c/o Defendant's Counsel: Factual testimony

12. Elizabeth Sorrell, c/o Defendant's Counsel: Factual testimony

13. Jason Alger, c/o Michelle Alger, 23 Cross Street, Carver MA 02330: Factual testimony

14. Rabbi Lawrence Silverman, Congregation Beth Jacob, Plymouth, Massachusetts: Factual testimony

15. Penny Hurwitz, Anti-Defamation League, 40 Court Street, Boston, MA 02108: Factual testimony

The Plaintiffs reserve the right to call rebuttal witnesses, as well as any witnesses identified by the Defendants in their case in chief.

**b. Offered by the Defendants:**

1. Elizabeth Sorrell
   c/o undersigned defense counsel

2. Scott Knief
   c/o undersigned defense counsel

3. Michael Schultz
   c/o undersigned defense counsel

4. Christine Cabral
   c/o undersigned defense counsel

5. Sean Sullivan
   c/o undersigned defense counsel

6. Dr. Michael Greene

c/o undersigned defense counsel

7. Michielle Robidoux
   c/o undersigned defense counsel

8. Jason Alger
   c/o Michelle Alger
   23 Cross Street
   Carver, MA 02330

9. Madeleine Dickson
   124 Center Street
   Carver, MA 02330

10. Deborah Sheehan
    c/o undersigned defense counsel

11. Irene Turner
    c/o undersigned defense counsel

12. Lorraine Rogers
    57 Crystal Lake Drive
    Carver, MA 02330

    Mailing Address:
    P.O. Box 442
    Carver, MA 02330

13. Elizabeth Goodwin
    c/o undersigned defense counsel

14. Dennis Tucker
    114 Meadow Street
    Carver, MA 02330

    Mailing Address:
    P.O. Box 604
    Carver, MA 02330

15. Karen Teichert
    c/o undersigned defense counsel

16. Barbara Wilde
    25 Jones Street
    Marshfield, MA 02050

17. Kimberly Duane

c/o undersigned defense counsel

18. Jonathan Evans
    c/o undersigned defense counsel

19. Marion McGinn
    c/o undersigned defense counsel

20. Paula Shaw
    c/o undersigned defense counsel

21. Daina Pierce
    c/o undersigned defense counsel

22. Andrea Mooney
    c/o undersigned defense counsel

23. Patricia Winslow
    c/o undersigned defense counsel

The Defendant reserves the right to call rebuttal witnesses, as well as any witnesses identified by the Plaintiff in Defendants' case in chief.

IX.     **Proposed Exhibits:**

    a.  **Agreed-Upon Exhibits:**

1.     2011-2012 CMHS Student Handbook

2.     2012-2013 CMHS Student Handbook

3.     Zachary Groezinger's CMHS Student Records (Discipline, Attendance, Academic, Health/Nurse, etc.)

4.     Zachary Groezinger's CMHS Individualized Education Plans (including Educational Assessments and Team Meeting notes)

5.     Jason Alger's CMHS Discipline Records

6.     Malachi Barrett's CMHS Discipline Records

7.     Jacob Deane's CMHS Discipline Records

8.     Ryan McInnis' CMHS Discipline Records

9.     Shawn Mazzilli's CMHS Discipline Records

10.      10/28/11 Bullying Prevention & Intervention Incident Reporting Form

11.      11/8/11 Bullying Prevention and Intervention Incident Reporting Form

12.      1/31 Bullying Prevention and Intervention Incident Reporting Form

13.      1/4-1/6/13 Bullying Prevention and Intervention Incident Reporting Form

14.      Guidance and Counseling Referral Form re: Zachary Groezinger

15.      5/22/13 Incident Report

16.      5/31/13 Memo from Cabral to Sorrell

17.      8/15/13 Ltr from Carver Police to Superintendent Re: Deane Charges

18.      8/15/13 Ltr from Carver Police to Superintendent Re: Mazzilli Charges

19.      Recommended Candidate Form 9/26/12

20.      09/26/12 Offer of Employment to J. Sordillo

21.      J. Sordillo New Employee Data Sheet

22.      7/08/13 Ltr from Sorrell to Jennyfer

23.      09/09/13 Ltr. from Teichert to Jennyfer

24.      Special Education Bus Monitor Posting 8/28/13

25.      J. Sordillo Recommended Candidate Form 9/13/13

26.      9/13/13 Offer of Employment to J. Sordillo

27.      CMHS Bullying Prevention & Intervention Plan (including Memorandum of Understanding with Carver Police Department)

28.      Stoneman Chandler "Addressing Bullying in 2010" Presentation to CMHS Staff

**b. Offered by the Plaintiffs:**

A. 6/6/13 Notes for Meeting with Jacob Deane

B. Photograph of Desk with Swastika

C. 1/21/11 Letter from Cabral To Whom It May Concern, re: 12/17/10 incident

D. 4/30/12 Bullying Prevention and Intervention Reporting Form

E.  3/11/14 Letter to Parent/Guardian, re: discriminatory pictures of swastikas

F.  2/2/11 Facsimile to Attorney General's Office of Civil Rights

G.  1/31/11 Letter from Lawrence Silverman to Magistrate, Juvenile Court, Wareham District
Court

H.  12/21/10 Letter from Cabral to Parent/Guardian, re: 12/17/10 incident

I.  12/19/10 Interview Notes re: 12/17/10 incident

J.  1/31/11 Guidance & Counseling Referral Form, re: 12/17/10 incident

K.  11/3/10 Dept. of Elementary and Secondary Education Press Release

L.  10/26/10 Office of Civil Rights "Dear Colleague" letter

M.  DESE Model Bullying Reporting Form

N.  Receipts for Fuel for Transporting Zachary to School in Eighth Grade

O.  Credit Card Statements Showing Charges for Transporting Zachary to School in Eighth
Grade

P.  Peer Training Program Contract

Q.  A World of Difference Training Material

R.  School Safety and Discipline - Offense Report (2012-2013)

The Plaintiffs also reserve the right to offer rebuttal exhibits into evidence.

### c.  Offered by the Defendants:

A.  Devin Hallett's CMHS Discipline Records

B.  Jason Parson's CMHS Discipline Records

C.  Anthony Tantillo's CMHS Discipline Records

D.  John Wolff's CMHS Discipline Records

E.  Michael Vitale's CMHS Discipline Records

F.  Austin Putney's CMHS Discipline Records

G.  Facebook postings made by Jennyfer Sordillo

H.  Twitter postings made by Zachary Groezinger

I.  Conviction records of Robert Groezinger

J.  11/9/11 Ltr. to Parents of J. Deane

K.  Parent or Guardian Notification Form re: Zachary Groezinger

L.  5/28/13 Letter to Parents of J. Deane

M.  8/23/13 Ltr to Parents of S. Mazzilli

N.  8/4/13 Ltr. to K. Mazzilli

O.  Teichert Bus Monitor Memo 09/09/13

P.  J. Sordillo Application for Employment with CSD

Q.  MARC Bullying Training Materials

R.  CMHS "Second Steps" Curriculum

S.  Photographs of CMHS Gymnasium, Lunchroom and Main Entrance

T.  Restraining Order Forms Completed by Stephanie Parsons and Sue Ellen Tantillo

The Defendants also reserve the right to offer rebuttal exhibits into evidence.

### III.        Position on Opposing Party Objections to Exhibits

#### a.  Offered by the Plaintiffs:

The Plaintiffs object to the following exhibits offered by the Defendants:

   i.   Photographs of CMHS Gymnasium, Lunchroom and Main Entrance

   ii.  Restraining Order Forms Completed by Stephanie Parsons and Sue Ellen Tantillo

   iii. Conviction records of Robert Groezinger

**b. Offered by the Defendants:**

The Defendants object to the following exhibits offered by the Plaintiffs:

    i. Photograph of Desk with Swastika

    ii. A World of Difference Training Material

    iii. Peer Training Program Contract

    iv. 3/11/14 Letter to Parent/Guardian, re: discriminatory pictures of swastikas

    v. 11/3/10 Dept. of Elementary and Secondary Education Press Release

    vi. 10/26/10 Office of Civil Rights "Dear Colleague" letter

Respectfully submitted,

| PLAINTIFFS | DEFENDANTS, |
|---|---|
| ZACHARY GROEZINGER, a minor, by his mother Jennyfer Sordillo and father Robert Groezinger, and JENNYFER SORDILLO, | CARVER SCHOOL DEPARTMENT, CHRISTINE CABRAL, individually and in her capacity as Assistant Principal of Carver Middle High School,  SCOTT KNIEF, individually and in his capacity as Principal of Carver Middle High School, and ELIZABETH SORRELL, individually and in her capacity as Superintendent of Carver Public Schools, |
| By Their Attorneys, | By their Attorneys, |
| | PIERCE, DAVIS & PERRITANO, LLP |
| ___/s/ Joseph Sulman | /s/ John J. Davis |
| Joseph L. Sulman, BBO # 663635 David I. Brody, BBO # 676984 Law Office of Joseph L. Sulman, Esq. 1001 Watertown Street, Third Floor West Newton, Massachusetts 02465 (617) 521-8600 jsulman@sulmanlaw.com dbrody@sulmanlaw.com | John J. Davis, BBO #115890 Shauna R. Twohig, BBO #685590 90 Canal Street, Fourth Floor Boston, MA 02114-2018 (617) 350-0950 jdavis@piercedavis.com stwohig@piercedavis.com |

May 22, 2015